UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/21/2020

KYLE MCBRIDE,

                            Petitioner,

            v.

RAYMOND COVENY,

                            Respondent.

No. 19-CV-200 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Kyle McBride, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  McBride pled guilty in New York State Supreme Court to attempted burglary, aggravated family offense, and assault, and was sentenced to five years of imprisonment and five years of post-release supervision.  For the reasons set forth below, his petition is denied.

## BACKGROUND

### I.      Underlying Criminal Conduct

According to the state court complaint, in the early morning of May 30, 2014, McBride physically assaulted Tiffany Watson, with whom he was in a romantic relationship, inside her apartment.  He was alleged to have "tightly grabb[ed] [her] face and head with two hands and slam[med] [her] head into the wall, causing a bruise to the right side of [her] face, near [her] eye, and causing [her] substantial pain."  SR at 21.[1]  On June 2, at approximately 1:15 a.m., McBride again appeared at Watson's apartment.  Watson "did not let defendant inside," but McBride pushed his way in.  Upon entering, McBride punched Watson in the face.  Her twelve-year-old

---

[1] "SR" refers to the state court records submitted by the State at docket entry 10.

son attempted to intervene, but McBride "pushed him to the ground." *Id*. McBride "then struck [Watson] three more times in the face with a closed first, causing a bleeding laceration to [her] face, and causing [her] substantial pain." *Id*. McBride exited the apartment, but when Watson attempted to close the door, he pushed it open, hitting Watson once again in the face. Watson suffered lacerations to her face and inside her mouth.

After McBride left, Watson reported the incident to the police. McBride was arrested the next morning. Officers also went to Watson's apartment to take pictures of the damage to her apartment's front door. *See id.* at 95.

## II.     Trial Court Proceedings

On June 6, 2014, McBride was indicted on several counts, including burglary in the second degree, *see* N.Y. Penal Law § 140.25(1)(b); criminal possession of a weapon in the third degree, *see id*. § 265.02(1); aggravated family offense, *see id.* § 240.75(1); assault and attempted assault in the third degree, *see id.* §§ 110, 120.00(1); criminal mischief in the fourth degree, *see id*. § 145.00(1); and endangering the welfare of a child, *see id.* § 260.10(1). *See* SR 11-16.

Henry Weil was appointed to represent McBride. Shortly after being appointed, counsel filed an omnibus motion, seeking to inspect the grand jury minutes, dismiss or reduce counts in the indictment for insufficient evidence or being procedurally defective, and suppress physical evidence, McBride's statements to officers, and a witness identification. *See id.* at 62-77. The trial court granted this motion in part, ordering hearings as to the admissibility of particular evidence. *See id.* at 48-49.

### A. January 15, 2015 Hearing

Prior to the January 15, 2015 hearing, the People offered McBride a plea deal.  *See* Jan. Hr'g Tr. 2:8-10.[2]  In exchange for pleading guilty to attempted burglary, McBride would serve five years in prison and five years of supervised release – the minimum sentence.  *See id.* at 2:11-17.  At the start of the hearing, McBride declined the deal.  *See id.* at 2:10.

McBride then requested new counsel.  He explained that, "[d]uring this case, [counsel] doesn't seem to have my best interest at heart."  *Id.* at 3:6-7.  Although he "h[ad] asked this attorney to do things for [him] as far as speaking with [the prosecutor] . . . [h]e has not done anything that [he] asked."  *Id.* at 3:8-10.  In particular, he wanted counsel to get him placed in a substance abuse program.  *See id.* at 4:12-13.  Counsel denied these allegations, noting that he had met with the prosecutor three times on McBride's behalf.  *See id.* at 3:19-20.  Rejecting McBride's request for new counsel, the judge explained:

> Mr. Weil has done everything that is required of a good defense attorney in terms of filing pretrial motions to suppress, to dismiss.  I've read his motions and granted his applications for hearings on the motion to suppress.  I did not deny them.  And he has succeeded in having the district attorney come down. . . . [H]e is doing everything. . . . [T]he record is clear that he is doing everything that he possibly can.  To get the district attorney to offer the minimum is a significant battle right there in itself.

*Id.* at 3:11-18, 3:21-25, 4:1-2.  Addressing McBride's desire to be placed in a program, the judge further told him: "As a matter of law, you're not eligible.  You don't fit the criteria."  *Id.* at 4:23-24.

In the month following that hearing, McBride filed several *pro se* motions, including one again seeking new counsel.  *See* SR 30-38.  He argued that "it [has] become[] self evident that said representation does not measure up to the constitutional[ly] require[d] level."  *Id.* at 38.

---

[2] Citations to the transcripts of the trial court proceedings refer to the State's submission at docket entry 9.

According to McBride, counsel was focused on getting him to "cop a plea," had not visited him, failed to inform him of what motions were made on his behalf, and failed to investigate the case. *Id.* at 34.  McBride's *pro se* submission also included a letter, dated February 12, requesting to be placed in a substance abuse program with a notarized letter from Watson, dated September 18, 2014, stating that McBride caused her harm only because he had relapsed and that she is "dropping the charges because I am not in fear of Kyle McBride."  *Id.* at 85, 88.

### B.  February 26, 2015 Hearing

The next hearing was held on February 26.  The court began by denying McBride's *pro se* motions.  As to McBride's request for new counsel, the court allowed him to renew his request in person even though his written motion did not raise "grounds that the Court would entertain as being an application."  Feb. Hr'g Tr. 4:3-4.  McBride proceeded to explain the basis for his motion:

> My lawyer has not come up to see me to discuss any strategy. There is no private investigator.  There is nothing that's been keeping me abreast about what's going on with this trial, or anything that we're supposed to be doing.  I don't trust him as of right now.

*Id.* at 4:12-18.  Counsel disputed McBride's statements, explaining that he had met with McBride and the prosecutor "on multiple occasions" – both "in the pens" and via "video conference[]."  *Id*. at 6:1-3.  He further noted that "the offer that this case started out with, which was ten years, is now down to five."  *Id*.

The judge denied McBride's request for a new lawyer.  She stated that counsel, who had previously appeared before her, was a "very experienced attorney" and "very good advocate."  *Id.* at 5:1-4.  She further "assured [McBride] that he's doing everything he can to defend you with the best strategy."  *Id.* at 5:7-9.  In particular, she noted that "[counsel] has actually

succeeded where many a lawyer has not succeeded, and the DA has come down from the top

count right now." *Id*. at 6:7-11.

At the end of the hearing, the People stated that the plea offer would remain available to

McBride only until the next court proceeding. *See id*. at 7:9-10.

### C.  April 13, 2015 Hearing/Plea

On April 13, 2015, with the pre-trial evidentiary hearing set to begin, McBride agreed to

accept the plea deal. *See* Apr. Hr'g Tr. 3:7-10.  McBride first requested that the deal be reduced

to four years in prison. *See id*. at 3:8-9.  The People responded that it was "not able legally to do

anything less than five," but would not oppose McBride's attempts – once incarcerated – to enter

a substance abuse program. *Id*. at 3:15-25.

After the court explained that sentencing would take place in two weeks, McBride and

his counsel had the following exchange:

> McBride: Why you keep trying to get me to cop out?
> Counsel: Do whatever you want.
> McBride: Why are you yelling at me?
> Counsel: Control yourself.
> McBride: Yo, stop talking to me like that.  You already made sexual advances at me –

*Id.* at 5:5-11.  The court interrupted and sought to ensure that McBride intended to proceed with

the plea.  This led to the following exchange between McBride and the court:

> Court: Mr. McBride, do you want to plead guilty or –
> McBride: I was just trying to fire this man.  You would not let me fire this man.
> Court: I am not entertaining that application.  We have been down that road.
> McBride: Give me the five.  I'll be back.
> Court: You would like five?
> McBride: Give me the five.
> Court: You understand that it is five years post-release supervision.  Do you understand?
> McBride: That's nothing.
> Court: So you are clear, McBride, this is a waiver of appeal.
> McBride: I got so much prison time, I could be a lawyer.
> Court: Mr. McBride, I have to ask you this on the record.  Do you understand –

McBride: I understand everything.  Been through this six times, Ms. Jackson.

*Id.* at 5:12-19; 6:1-7.  The court moved forward with the plea, confirming that McBride

"underst[oo]d [his] rights," including that he was waiving his right to appeal and was mentally

sound to make this decision.  *Id.* at 6:8-10, 8:11-25; 9:1-14.

The court then asked McBride whether he "had sufficient time to speak with the attorney

and the Court before deciding to plead guilty," to which he responded "[n]o, ma'am."  *Id.* at

9:15-18.  As a result, the court announced that the parties should proceed to trial.  McBride then

clarified his answer, stating that he believed that he had insufficient time with counsel but was

"satisfied . . . with the representation that counsel has given [him]."  *Id.* at 9:24-25, 10:1-2.

Several moments later, the court explained that McBride would have to serve his remaining year

of parole after completing this sentence.  McBride indicated that he did not understand this, at

which point the court explained it in more detail.  *See id*. at 12:17-23, 13:21.  At the end of the

hearing, the judge found "that the defendant fully, freely and voluntarily allocuted."  *Id.* at 15:12-

14.

### D.  Sentencing

On May 1, 2015, McBride was sentenced to five years of imprisonment and five years of

post-release supervision as to three counts: attempted burglary in the second degree, aggravated

family offense, and assault in the third degree.  *See* May Hr'g Tr. 3:16-20.  The court also issued

an order of protection, which was to remain in effect until May 2028.  *See id.* at 3:21-24.

On June 9, 2015, without McBride present, the court made an administrative correction to

his sentence, amending his sentence for the aggravated family offense from one to three years on

this count to one-and-a-half to three years.  *See* June Hr'g Tr. 2:11-17.  This amendment, the

court explained, had "no repercussions or prejudice to the defendant since this is a sentence that is running concurrent with the five years." *Id.* at 2:15-17.

## III.    Direct Appeal

On November 23, 2016, McBride appealed to the Appellate Division, First Department. He raised two arguments: (1) the court had failed to conduct "even a minimal inquiry" into his request for new counsel, *see* SR 106-10, and (2) the court erred in amending his sentence for the aggravated family offense without him being present, *see id.* at 110-12. Although the People opposed McBride's appeal on the first ground, it agreed that he had been "improperly resentenced . . . on the aggravated family offense count without having [been] produced." *Id.* at 141.

On June 22, 2017, in agreement with the parties on the second issue, the First Department remanded the matter for resentencing. *See id.* at 160 (*People v. McBride*, 151 A.D.3d 623 (1st Dep't 2017)). But as to the first issue regarding his request for new counsel, the appellate court held that McBride "made a valid waiver of his right to appeal, which forecloses review of his claim that the court improperly denied his request for new counsel." SR 159 (internal citation omitted). It further noted that, "[r]egardless of whether defendant made a valid waiver of his right to appeal, we find that the court providently exercised its discretion in denying defendant's application for reassignment of counsel." *Id.* at 160. McBride, the First Department found, "failed to make specific factual allegations of genuinely serious complaints that would trigger the court's obligation to inquire further" into this issue at the plea hearing. *Id.* (explaining that "the court made reference to recent prior inquiries into defendant's complaints about the same attorney, and it declined to revisit the issue").

7

On September 8, 2017, the Court of Appeals of New York denied McBride's request for leave to appeal. *See id.* at 167.

## IV.    Post-Conviction Relief

On February 25, 2017, with his direct appeal still pending, McBride filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10. *See id.* at 168-69.  His motion raised three arguments: (1) his "plea was made under compulsion, duress and coercion, due to ineffective assistance of counsel, depriving defendant of his constitutional right to effective assistance of counsel, making defendant's plea not knowing, voluntary and intelligent"; (2) counsel "fail[ed] to investigate and request [a] private investigator, to obtain material evidence to mount a defense, deprived defendant of his constitutional right to effective assistance of counsel"; and (3) there was "[i]nsufficient proof of physical impairment, or substantial pain to sustain [the] charge of assault in the third degree." *Id.* at 174-90.

On June 29, 2017, the New York State Supreme Court denied McBride's § 440.10 motion. *See id.* at 236-38.  The court first held that, "to the extent the defendant wishes to vacate his conviction based on deficiencies that plainly appear on the record," those claims had to be raised on direct appeal, and thus could not be addressed in this post-conviction proceeding. *Id.* at 236.  It cited two New York Court of Appeals cases – *People v. Grubstein*, 24 N.Y.3d 500 (2014), and *People v. Cuadrado*, 9 N.Y.3d 362 (2007) – in explaining that, pursuant to § 440.10(2)(c), "when the record is sufficient to permit review of an issue on direct appeal, a defendant who either has not appealed his conviction or, having appealed, has failed to raise that issue is barred from later asserting it as a basis for post-conviction relief." *Id.*  In this respect, it noted that the First Department had – only one week prior – affirmed McBride's conviction because he had waived his right to appeal and, in the alternative, because his request for new

counsel was reasonably denied.  *See id.*  The court further held that McBride's claim of ineffective assistance of counsel was "not sufficiently demonstrated."  *Id.* at 236-37.  Specifically as to McBride's plea, the court noted that the plea was "advantageous" because McBride faced the possibility of either a longer determinate sentence or being discretionarily sentenced as a predicate felon if he proceeded to trial.[3]  *See id.* at 237-38.  McBride sought leave to appeal the Supreme Court's denial of his § 440.10 motion.  On July 10, 2018, the First Department denied his application.  *See id.* at 354.

On January 8, 2019, McBride filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The State responded on May 9.  *See* Dkt. 8.  Although McBride did not file a reply, he informed the Court on September 24 that he nonetheless sought to proceed with this action.  *See* Dkt. 12.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant a petition for habeas corpus if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted).  As such, "[t]his is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court

---

[3] Among other convictions, McBride had a prior violent felony conviction for robbery in the second degree. *See id.* at 17; *see also* Apr. Hr'g Tr. at 17:15-18 ("The Court finds the defendant fully, freely and voluntarily admitted to the prior felony conviction and was adjudicated as a predicate felon.").  Therefore, if convicted and the court chose to sentence him as a persistent felony offender, McBride could have faced "15 years to life."  SR 237.

rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

## DISCUSSION

McBride's petition presents four issues: whether (1) his plea was coerced, unknowing, and involuntary, in part due to ineffective assistance of counsel; (2) his counsel's alleged failure to investigate or request a private investigator constituted ineffective assistance of counsel; (3) his counsel's "unwanted advances" in exchange for effective representation led him to receive ineffective assistance of counsel; and (4) the prosecutor's knowing use of false evidence deprived him of his constitutional rights. *See* Pet. at 3. The Court finds all of Petitioner's arguments unpersuasive.

## I.      Whether McBride's Plea Was Coerced, Unknowing, and Involuntary

McBride first argues that he was coerced to plead guilty by counsel and the court at the April 13, 2015 hearing. *See id*. at 5-6. McBride says he believed "he was in court for pretrial hearings," not to plead guilty. *Id*. at 5. Citing the colloquy during the hearing between the court, counsel, and McBride as to whether he could fire counsel and whether he had sufficient time to speak with counsel about the plea, McBride asserts that he "completed [the] colloquy under duress of complicity, coercion, intimidation, and threats." *Id*. at 6. In opposition, the State contends that this claim is unexhausted, procedurally defaulted, and fails on the merits.

As an initial matter, this claim is exhausted. A state prisoner seeking federal habeas relief must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This ensures that the state court has "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Walker v. Martin*, 562 U.S. 307, 315-16

(2011).  To exhaust, a petitioner must "fairly . . . present the federal claim[] in state court," meaning that "he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (internal quotation marks omitted); *see also Otero v. Stinson*, 51 F. Supp. 2d 415, 419-20 (S.D.N.Y. 1999) (explaining that presentment of a claim in a § 440.10 motion is a means of exhaustion).  Because McBride argued in his § 440.10 motion that his "plea was made under compulsion, duress and coercion" and that it was "not knowing, voluntary and intelligent," he fairly presented this claim to the state court.  SR 174 (citing both state and federal law); *see also* Opp. at 9 (acknowledging that the "petitioner raised a superficially similar claim in the state court via his motion to vacate the judgment").

Next, the State contends that the claim is procedurally defaulted pursuant to § 440.10(2)(c) because "[t]he instant claim is predicated exclusively on allegations that are apparent on the face of the record, and therefore it could have been raised on direct appeal." Opp. at 9; *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("[D]ismissal of a habeas claim on the ground that it was procedurally defaulted 'differs crucially' from a dismissal for failure to exhaust state remedies.").  "Under the procedural-default doctrine, when a prisoner has exhausted his state remedies but has not given the state courts a fair opportunity to pass on his federal claims, the prisoner has procedurally defaulted his claims and is ineligible for federal habeas relief absent a showing of 'cause and prejudice' or 'a fundamental miscarriage of justice.'"  *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court

explicitly tied the miscarriage of justice exception to the petitioner's innocence.").  As relevant

here, § 440.10(2)(c) provides that "the [state] court must deny a motion to vacate a judgment

when . . . [,] although sufficient facts appear on the record of the proceedings underlying the

judgment to have permitted, upon appeal from such judgment, adequate review of the ground or

issue raised upon the motion, no such appellate review or determination occurred owing to the

defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually

perfected by him[.]"  *See also Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that §

440.10(2)(c) is "an adequate state procedural bar to [a] federal habeas petition").

The Court agrees with the State that McBride's claim, as presented in his federal habeas

petition, is procedurally defaulted.  McBride argues that his plea during the April 13, 2015

hearing was involuntary and coerced.  The factual basis of that claim is apparent from the state

court transcript.  *See* Pet. at 5-6.  Nonetheless, despite the claim being evident on the face of the

record, McBride did not raise this issue – that is, whether his plea was "improperly advised" by

defense counsel or otherwise coerced, not knowing, or involuntary – on direct appeal.  On direct

appeal, McBride instead argued that "[t]he [trial] court erred when it denied – without any

inquiry – Mr. McBride's request for new counsel made before Mr. McBride entered into a plea."

SR 106.  This claim, based on New York law, rested on the contention that the trial court had

failed to conduct a "minimal inquiry" into McBride's request for new counsel, refusing to

address "the broken down attorney-client relationship, or Mr. McBride's allegations of

harassment" and improperly relied on its previous denials of his requests for new counsel to deny

this request.  *Id.* at 108-09.  The appeal thus did not focus on the plea, or whether the plea was

"improperly advised," coerced, or involuntary in any way.  Accordingly, even though "sufficient

facts appear on the record of the proceedings underlying the judgment to have permitted . . .

adequate review of the ground or issue raised," § 440.10(2)(c), McBride's coerced or involuntary

plea claim was not raised on direct appeal, nor could McBride now return to state court to raise

it. *See Velazquez v. Poole*, 614 F. Supp. 2d 284, 319 (E.D.N.Y. 2007) ("[The petitioner] cannot

now seek leave to appeal and raise the federal nature of this issue, because he has already made

the one and only request for leave to appeal to which he is entitled under New York Court

Rules." (citing N.Y. Comp. Codes R. & Regs. tit. 22, § 500.20)).  This claim is, therefore,

procedurally defaulted under New York law.[4]  *See Clark*, 510 F.3d at 392 ("New York law

provides . . . that a motion to vacate based on facts visible on the trial record must be dismissed

where the defendant unjustifiably failed to raise the issue on direct appeal.").

Finally, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on

direct review, the claim may be raised in habeas only if the defendant can first demonstrate either

'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523

U.S. 614, 622 (1998) (internal citations omitted).  McBride has "neither asserted cause for his

failure to raise the federal aspects of his evidentiary claim on direct appeal, nor set forth any

prejudice." *Velasquez*, 614 F. Supp. 2d at 319.  And alleging that evidence against him was

insufficient is distinct from an innocence claim.  McBride, therefore, has not demonstrated that

"some objective factor external to the defense impeded counsel's efforts to comply with the

State's procedural rule."[5]  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

---

[4] When reviewing McBride's § 440.10 motion, the New York State Supreme Court thus correctly held that his claims were procedurally defaulted "to the extent the defendant wishes to vacate his conviction based on deficiencies that appear plainly on the record" because, "[a]s a general matter," those claims must be raised on direct appeal.  SR 236.

[5] To the extent that McBride is arguing that his appellate counsel was also ineffective (as the State suggests, *see* Opp. at 10), he has never provided support for that assertion, nor would that claim be exhausted and properly reviewable here.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

As such, because McBride did not argue on direct appeal that his plea was involuntary or

coerced, § 440.10(2)(c) now bars him from raising it in post-conviction proceedings. *See People*

*v. Lebron*, 128 A.D. 3d 851, 852 (2d Dep't 2015) (explaining that "the [New York] Supreme

Court properly denied the motion without a hearing" because "[t]he defendant offered no

justification for failing to raise some of his present claims on his direct appeal from the

judgment"); *People v. Rauf*, 111 A.D. 3d 492, 493 (1st Dep't 2013) (explaining that "[t]he court

properly denied the motion because it was based on claims that . . . should have been raised on

that appeal" since "all of defendant's ineffective assistance claims were reviewable on direct

appeal.").[6]

---

[6] Even if this claim were not procedurally defaulted, it would still fail on the merits. "[T]he validity of a plea of guilty is," generally speaking, "determined by reference to whether it was intelligent and voluntary." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). "A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'" *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). For the plea to be "intelligent," the defendant must have "had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way." *Miller*, 848 F.2d at 1320. And to be "voluntary," the plea cannot be "the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Id.*

    The transcript of McBride's plea hearing reflects that he entered into this plea voluntarily and intelligently. McBride stated at the very beginning of the April 13, 2015 plea hearing that he was "willing to cop out." Apr. Hr'g Tr. 3:7. While issues arose between McBride and his counsel at the hearing, the court nonetheless ensured that McBride still wanted to plead guilty, *see id.* at 5:12-13, and that he understood the rights he was waiving by accepting this plea. Throughout that colloquy, McBride expressed that he understood his rights, including that he was "satisfied . . . with the representation that counsel ha[d] given [him]." *Id.* at 9:24-25, 10:1-2; *see also id.* at 6:6-7 ("I understand everything. Been through this six times[.]"). He also explicitly said that no one had "forced [him] or threatened [him] to plead guilty today." *Id.* at 11:20-22. Indeed, at one point when the judge suggested the case proceed to trial, McBride insisted that he wanted to move forward with the plea. *See id.* at 8:3-7. As the Supreme Court has explained, statements made in open court "carry a strong presumption of verity" and thus "constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 65, 74 (1977). Accordingly, the transcript confirms the judge's conclusion that "the defendant fully, freely and voluntary allocuted," and therefore that McBride was not coerced into pleading guilty. *Id* at 15:12-13.

    To the extent that McBride argues that he was "improperly advised" by his defense counsel in connection with the plea, the state court reasonably concluded that he "received effective assistance of counsel . . . [a]s to [his] plea." SR 237. Among other things, an ineffective assistance claim in the context of a guilty plea requires a defendant to show that he was prejudiced by counsel's performance, meaning that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As the state court explained in denying his § 440.10 motion, McBride received "an advantageous plea deal," while proceeding to trial "could have exposed him to a potential determinate sentence of 7-15 years with 5 years post-release supervision or in the alternative . . . an indeterminate sentence of 15 years to life as a possible discretionary persistent felony offender." SR 237. Thus, even if it were to reach the merits, the

**II.     Whether Counsel Was Ineffective for Failing to Investigate and Present Mitigating Evidence**

McBride next argues that his counsel failed to adequately investigate his case and present substantial mitigating evidence at his plea and sentencing hearings.  Specifically, he states that, when counsel visited him on April 10, 2015, he asked counsel "to retrieve material evidence in the form of an affidavit by complainant, from petitioner's residence, where alleged crimes occurred, to challenge complainant's false testimony of petitioner not residing with her," but counsel refused because he "do[es] not have the time or the resources to play a game of clue." Pet. at 8.  Additionally, McBride contends that "[t]he People's Voluntary Disclosure/Discovery is absent of scientific and medical reports, to corroborate allegations, or prove physical impairment, extent of pain, or physical injury, assault, or burglary." *Id*.  According to McBride, "[t]rial counsel possessed the People's discovery, and did not present evidence, in petitioner's favor, or advocate for petitioner." *Id*. at 8-9.

Despite the State's assertion otherwise, this claim is also exhausted.[7]  The State acknowledges that "petitioner argued in his motion to vacate the judgment that counsel erred in failing to investigate some of these evidentiary items," but contends that McBride failed to argue "that counsel should have presented [these evidentiary items] as mitigating evidence."  Opp. at 17.  The Court disagrees.  McBride's § 440.10 motion alleges not only that counsel "fail[ed] to investigate and request [a] private investigator, to obtain material evidence" but also failed "to mount a defense."  SR 176.  In it, he further argues that counsel failed to prepare a defense, particularly in "refus[ing] defendant's request for him to impeach complainant's credibility," not

---

Court could not conclude that the state court unreasonably denied McBride's claim of ineffective assistance in connection with his plea.

[7] Unlike the first claim regarding McBride's plea, Respondent does not argue that this claim, nor the two subsequent ones, are procedurally defaulted.

"inform[ing] [him] of affirmative defense[s]," such as "challenging prosecutor's absence of required evidence," and failing "to obtain material evidence relevant to defense." *Id.* at 177-78. Because the factual and legal allegations presented in his federal habeas petition were "fairly presented" to the state court in his § 440.10 motion, the claim is exhausted. *Keane*, 329 F.3d at 295.

As such, the Court considers whether the state court's resolution of this ineffective-assistance claim for failing to investigate and present mitigating evidence was unreasonable. The state court concluded that "defendant's claim of having received ineffective assistance of counsel . . . is not sufficiently demonstrated." SR 237. The Court cannot conclude this was an unreasonable application of federal law and thus denies McBride's claim. *See* 28 U.S.C. § 2254(d)(1).

Whether counsel should have taken certain investigatory steps and presented particular evidence are strategic decisions for which substantial deference is given. *See Lindstadt v. Keane*, 239 F.3d 191, 200 (2d Cir. 2001) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984))). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). Counsel is, therefore, not required "to conduct a comprehensive investigation of every possible lead or defense." *United States v. Caracappa*, 614 F.3d 30, 47 (2d Cir. 2010).

Based on the allegations before the Court and the latitude in strategy to which counsel is entitled, there was nothing unreasonable about his conduct. As the trial court noted, the evidence

against McBride was substantial.  *See* Feb. Hr'g Tr. 4:9-11 ("You may not like the advice that he's given to you, but he's doing everything he can considering that evidence.").  Indeed, when McBride expressed concern to the court that counsel had not hired a private investigator, the judge explained that, "[i]n this case, what your lawyer has decided to do is a matter of strategy." *Id*. at 4:25-5:1.

McBride's criticism of counsel for failing to obtain an affidavit from Watson is also unavailing.  *See* Pet. at 8.  In light of the statements that Watson had made to law enforcement, together with the order of protection that had been issued, counsel may have reasonably thought that seeking such an affidavit would be less than helpful, if not problematic.  For instance, McBride appears to argue that this affidavit was important because it would show that he "resid[ed] with [Watson]," presumably based on the assumption that his residency with her would serve as a defense to burglary.  *Id*.  But even if McBride resided with Watson at her apartment at some point, Watson could have revoked his right to enter, including when she attempted to prevent him from entering the apartment on the day of the incident.  *See People v. Gates*, 171 A.D. 3d 543, 543 (1st Dep't 2019) ("[A]fter the victim revoked any license that defendant may have had to be in her apartment, defendant remained unlawfully with the contemporaneous intent to commit a crime.").

Moreover, for McBride to establish ineffective assistance of counsel, he would have to show that he was prejudiced, such that counsel's deficiency "was likely to have affected the outcome of the . . . proceeding." *Strickland*, 466 U.S. at 677.  But he has failed to make this showing.  For instance, McBride appears to rest this ineffective assistance claim on the fact that his lawyer would not obtain an affidavit from Watson.  *See* Pet. at 8.  However, McBride himself obtained an affidavit from Watson, notarized on September 18, 2014, describing what happened

between them on June 2, 2014, which he enclosed with his *pro se* submission to the trial judge in

February 2015 – *before* his plea.  *See* SR 84-88.  It is therefore unlikely that another affidavit

from Watson would have made any difference – especially on the outcome of the proceeding.

And other than that affidavit, McBride does not specify what other mitigating evidence counsel

failed to investigate and how it likely would have affected the outcome of this proceeding.

Therefore, in light of the substantial deference owed to both counsel on strategic matters

and the state court under AEDPA, the Court holds that the denial of McBride's claim was

objectively reasonable, and that he has in any event failed to establish prejudice.

### III.     Whether Counsel Made Unwanted Sexual Advances that Rendered His Representation Ineffective

McBride also alleges that counsel made unwanted advances towards him and, "[w]hen

[he] did not concede to trial counsel's advance[s], . . . counsel abruptly refused petitioner's

request to impeach complainant."  Pet. at 10-11.  McBride alleges that counsel made two

inappropriate comments to him when meeting on April 10, 2015.  First, after being told that

McBride was dating both Watson and Watson's sister, counsel allegedly said, "Well, I can see

that.  You are handsome."  *Id.* at 10.  Counsel also purportedly told him: "You know you have

this thing about you where you're mean but sweet."  *Id.* at 11.

The State first argues that this claim is unexhausted "because petitioner did not fairly

present it to the state courts for review."  Opp. at 20.  While it acknowledges that his § 440.10

motion "alluded to 'sexual advances' in various contexts,'" it disputes that McBride "explained

to the state courts what he was referring to or claimed that counsel conditioned his actions on

those advances being accepted."  *Id*.  Rather, according to the State, McBride only "argued that

the sexual comments were inappropriate and unethical."  *Id.*

Although McBride did not raise this as a standalone issue in his § 440.10 motion, the allegation is incorporated into his two other ineffective assistance claims.  For instance, when arguing that his plea was made under coercion and duress, McBride states that he "informed [the] court of counsel's . . . inappropriate advances."  SR 175.  Then, with regard to counsel's alleged ineffectiveness for failing to investigate, McBride detailed the April 10, 2015 meeting with counsel where "counsel made inappropriate advances towards defendant."  *Id.* at 177.  While it is true that McBride cited New York's Code of Professional Responsibility, the allegations as a whole are part of a section alleging a deprivation of his constitutional right to effective assistance of counsel under the federal and state constitutions.  *See id.* at 176-78.  At the conclusion of this section, for example, McBride wrote that "[c]ounsel's erroneous advice, misrepresentation of facts, failure to investigate, failure to request a private investigator to obtain material evidence relevant to defense, making inappropriate advances, and negligence to review both law and facts relevant to defense, prevented defendant from a fair trial."  *Id.* at 178.  This, therefore, sufficiently informed the state court "of both the factual and the legal premises of the claim" of ineffective assistance based on inappropriate sexual advances made by counsel that McBride now "asserts in federal court."  *Keane*, 329 F.3d at 295.

Nonetheless, the state court's denial of this claim – that is, that counsel refused to adopt McBride's strategy when his alleged advances were rebuffed – was not unreasonable.  As previously noted, the state court concluded that McBride's "claim of having received ineffective-assistance . . . [was] not sufficiently demonstrated."  SR 237.  Overall, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) ("The reasonableness of counsel's

performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.").

McBride fails to reasonably connect his allegation that counsel made sexually suggestive comments to him with his contention that he received poor representation. Although in his petition, he conclusorily states that his idea to impeach Watson was rejected because he rebuffed counsel's advances, this allegation appears grounded purely in speculation. As such, the state court's determination that this claim was not "sufficiently demonstrated" is reasonable. SR 237.

The state court's denial of this claim was also reasonable because whether to adopt McBride's proposed impeachment strategy was a strategic matter for counsel to decide. *See United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (explaining that "[d]ecisions whether to engage in cross-examination . . . are . . . strategic in nature"). "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (2011). Counsel may, for example, have been reasonably concerned that impeaching the former girlfriend of the defendant – and victim of a violent physical assault – may backfire.

McBride has also not explained why counsel's refusal to adopt his impeachment strategy was either deficient or prejudicial. Even without AEDPA's standard of review, *Strickland* presents a "highly demanding" standard to overcome. *Kimmelman*, 477 U.S. at 382. Particularly given that McBride voluntarily pled guilty pursuant to an "advantageous deal," SR 237, he has not established how his proposed impeachment strategy would have affected the outcome of his case. Accordingly, McBride's claim does not overcome the "difficult to meet and highly deferential standard for evaluating state-court rulings." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citations omitted).

**IV.**     **Whether the Prosecutor Knowingly Used False Evidence**

McBride's final claim is that the "[p]rosecutor had knowledge of complainant's false testimonies, of petitioner not residing with her . . . [and] insufficient evidence of physical impairment, pain, or extent of pain, to establish assault, or physical injury caused by petitioner." Pet. at 12.  He offers no facts or evidence, however, to bolster this claim.  The one paragraph dedicated to this claim in his petition cites three parts of the record: (1) the March 24, 2014 notarized letter from Watson; (2) the September 18, 2014 notarized letter from Watson; and (3) the People's Voluntary Disclosure Form, dated June 9, 2014.  *See* Pet., Ex. A (Exhibits).

The State first argues that this claim too is unexhausted.  *See* Opp. at 23.  According to the State, "[p]etitioner never presented these claims on direct appeal or in his motion to vacate the judgment." *Id*.  The Court disagrees.  McBride did not raise this issue on direct appeal because, as he admits, "[a]ppellate counsel claimed there was no evidence of prosecutorial misconduct to raise this issue on direct appeal."  Pet. at 13.  But his § 440.10 motion "fairly presented" this claim.  *Keane*, 329 F.3d at 295.  It first alleged "[i]nsufficient proof of physical impairment, or substantial pain to sustain charge of assault in the third degree (Penal Law § 120.00(1)) and burglary in the second degree (Penal Law § 140.25(1)(b))," specifically noting the "absen[ce] of [s]cientific and [m]edical reports[] to confirm allegations of assault or physical injury."  SR 179-80.  Then, in conclusion, it alleged that the "[p]rosecutor[] also knew of the absence of legally sufficient evidence, as well as perjured testimony by complainant, and was adamant to obtain conviction based upon evidence that was false." *Id.* at 180-81.  Although his § 440.10 motion did not specifically cite to a federal constitutional provision or statute as to this argument, there need not be "a reference to 'book and verse' of the Constitution." *Daye v. Attorney General of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982).  So long as the factual allegations –

even if broad – alert the state court to an alleged constitutional violation, that is sufficient.  *See*

*id.* at 193.  Here, McBride's allegations in his § 440.10 motion sufficiently presented his claim

that the prosecutor knowingly used false evidence to the state court, thus permitting review by

this Court.

On the merits, however, this claim also fails.  The state court was objectively reasonable

in holding that "[a]ll of the other arguments by defendant have been carefully considered by the

Court and are found to be without merit."[8]  SR 238.  McBride's petition presents nothing but

speculation that the prosecutors knowingly used false evidence, including perjured testimony.

When "there is no proof, only speculation, that the prosecution presented false evidence or

perjured testimony, much less, than it had knowledge of such mendacity," it is not unreasonable

to reject such a claim.  *Page v. Burge*, 331 F. App'x 883, 883 (2d Cir. 2009).

Moreover, McBride pled guilty.  A guilty plea "serves as a stipulation that no proof by

the prosecution need b[e] advanced.  It supplies both evidence and verdict, ending controversy."

*Boykin v. Alabama*, 395 U.S. 238, 242 n.4 (1969).  At the plea, McBride confirmed the People's

allegations regarding the May 30 and June 2, 2014 incidents at Watson's apartment.  While

pleading guilty to attempted burglary, aggravated family offense, and assault, McBride admitted

that he "knowingly entered and remained unlawfully in a building with the attempt to commit a

crime therein," Apr. Hr'g Tr. 14:5-11, and that he, "with the attempt to cause physical injury to

---

[8] "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).  "Nothing in the phrase 'adjudicated on the merits' requires the states court to have explained its reasoning process."  *Id.* at 311.  Thus, although the New York State Supreme Court did not explain why it was denying this claim in McBride's § 440.10 motion, the Court still considers it a resolution on the merits to be reviewed under AEDPA's deferential standard.  *See Cox v. Donnelly*, 387 F.3d 193, 197 (2d Cir. 2004) ("Although the state courts in this case did not give a full analysis of the ineffectiveness claim before us, we still treat the claim for AEDPA purposes as one that was 'adjudicated on the merits.'").

another person, caused that injury," *id.* at 14:14-24.  McBride has not pointed to any false evidence used to convict him.

McBride's sole specific assertion that the People's Voluntary Disclosure Form failed to establish sufficient evidence of physical injury does not change this analysis.  It is unclear how McBride reached his conclusion from that form, which merely states that the People have "photographs or drawings relating to this criminal action," "other property obtained from the defendant," and "tapes or other electronic recordings which the People intend to introduce at trial."  Pet., Ex. A.  McBride's allegation of "insufficient evidence of physical impairment or injury is thus unsupported.  Pet. at 12.

Because the Court cannot say that "[t]he state court decision [was] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Woods*, 136 S. Ct. at 1151, this claim is denied.

## CONCLUSION

Accordingly, for the foregoing reasons, McBride's petition for habeas corpus is denied. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:      July 21, 2020
            New York, New York

_____
RONNIE ABRAMS
United States District Judge